THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE N.E.C.A.—IBEW LOCAL 176 HEALTH, WELFARE, PENSION, VACATION AND TRAINING TRUST FUNDS, | ) ) ) ) | Case No. 18-cv-1737 Judge Jorge L. Alonso |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| NEW FRONTIER ELECTRICAL CONSTRUCTION INC., an Illinois Corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

## Memorandum Opinion and Order

Plaintiffs filed this lawsuit to collect delinquent contributions owed under a collective

bargaining agreement. Plaintiffs are the trustees of the National Electrical Contractors

Association–IBEW Local 176 Health, Welfare, Pension, Vacation and Trust Funds, which were

established under trust agreements and collective bargaining agreements between various

employer associations and the Eastern IL Chapter of the National Electrical Contractors

Association ("NECA") and Local Union No. 176, IBEW. Defendant New Frontier Electrical

Construction, Inc. ("New Frontier"), an Illinois corporation engaged in electrical contracting

work, signed a letter of assent in which it agreed to be bound by all the provisions in the

approved labor agreements between NECA and Local Union No. 176, IBEW. Plaintiffs contend

that New Frontier failed to pay fringe benefit dues in accordance with those labor agreements.

Pending before the Court is Plaintiffs' motion for summary judgment [127]. For the reasons

discussed below, the Court denies Plaintiff's motion for summary judgment.

# Background

The Court takes the following undisputed facts from Plaintiffs' Local Rule 56.1 Statement of Material Facts. Before that, however, the Court takes a moment to comment on the Defendant's response to Plaintiffs' statement of facts and Plaintiff's requests to admit.

## I.     Local Rule 56.1

Local Rule 56.1(e) requires a party responding to a Local Rule 56.1 statement of facts to respond to each numbered paragraph in the moving party's statement and to attach any evidentiary material to that response. The Court enforces Local Rule 56.1 strictly. *McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules"). Defendant's response fails to respond to Plaintiff's statements of fact in accordance with Local Rule 56.1. Giving Defendant the benefit of the doubt, it appears Defendant confused Local Rule 56.1's requirements—responding instead to the numbered paragraphs in Plaintiffs' motion for summary judgment. *See* [135]. Instead, Defendant needed to respond to the numbered paragraphs in docket entry #130. Even after Plaintiffs pointed this out to Defendant, it still failed to correct this mistake when filing its sur-reply. Therefore, to the extent that Plaintiffs' factual statements are consistent with the evidence provided, the Court deems those facts undisputed.

## II.     Plaintiffs' Requests to Admit

The Court also addresses Plaintiff's requests to admit submitted with their summary judgment motion. Appended as Exhibit A to their statement of undisputed facts, Plaintiffs attached 103 requests to admit submitted to Defendant's then-attorney on July 26, 2019. Defendant failed to respond, but claims in a single sentence in its response brief that it was unaware of the requests to admit. This claim is not supported by any affidavit or other evidence.

Furthermore, additional exhibits attached to Plaintiffs' motion shows that Defendant's then-attorney, through an assistant, acknowledged receipt of the requests. Accordingly, Rule 36 of the Federal Rules of Civil Procedure requires those requests be deemed admitted. Fed. R. Civ. P. 36(a)(3). Moreover, Defendant has not filed any motion requesting those admissions be withdrawn or amended in accordance with Fed. R. Civ. P. 36(b). The Court, therefore, accepts Plaintiffs' requests as admitted. Having addressed those preliminary matters, the Court turns to the undisputed facts of this case.

## III.     Factual Background

Plaintiffs are the Trustees of the NECA-IBEW Local 176 health, welfare, pension, vacation, and training trust funds. Written trust agreements and collective bargaining agreements between various employer associations, individual employers, and the NECA and IBEW Local 176 established these funds. New Frontier is an Illinois corporation that engages in electrical contracting work. James Foster is the sole shareholder and owner of New Frontier.

### A.     The Inside Agreements

On February 26, 2010, New Frontier agreed to comply with all provisions in the then-current and subsequently approved labor agreements between IBEW Local 176 and NECA's Eastern Illinois Chapter, including the Inside Agreement between IBEW Local 176 and NECA. The Inside Agreement, among other things, requires employers to contribute to various funds established by the agreement. The present dispute covers the time period from June 1, 2016 to December 31, 2017 and involves two Inside Agreements: one effective on June 1, 2015 (the "2015 Agreement") and the other effective on June 1, 2017 (the "2017 Agreement") (collectively the "Agreements"). These Agreements set forth the conditions that employers signing a letter of assent agree to be bound by, including the fringe benefit contributions employers agree to make.

3

The Agreements further define an "owner in fact" of a company as an "[e]mployee of a closely held corporation who is a spouse or other close relative of an employer's majority shareholder, and who enjoys special privileges or status and/or exercise control over the company[.]" The parties agree that James Foster is the owner-in-fact of New Frontier.

### B. Contribution Rates

On June 1, 2016, NECA and IBEW Local 176 revised the relevant contribution rates for the various funds. The revisions based the new rates on the number of hours a covered employee worked. Sections 2.02 and 6.04 of the 2015 Agreement state that the agreement explicitly covers work performed by a Journeyman Wireman, Foreman, General Foreman, or Area General Forman. With respect to the types of work that are covered, Section 2.03 states that the agreement covers the "installation, operation, maintenance, and repair of all electrical wiring and electrical equipment used in construction, alteration and repair of buildings, structures, bridges, street and highway work, tunnels, subways, shafts, dams, river and harbor work, airports, mines, all electrical raceways for electrical cables and wires, and such other work as by custom has been performed by members of the I.B.E.W. when determined to be within the Inside branch…[.]" Sections 3.05 and 3.14 of the 2017 Agreement state the same.

The table below summarizes the various funds and contribution rates from June 1, 2015 to December 31, 2017.

| Fund | 2015 Rate (2016 Revised Rate) | 2017 Rate |
|---|---|---|
| Health and Welfare Fund | $14.77 per hour (increased to $14.97 per hour on 6/1/2016) | $15.47 per hour |
| Pension Trust Fund | $10.05 per hour (increased $10.30 per hour on 6/1/2016) | $10.77 per hour |
| Pension Trust Fund (Decatur) | $5.14 per hour | $5.39 per hour |

4

| Supplemental Unemployment Benefit Trust | $2.75 per hour (increased $3.25 per hour on 6/1/2016) | $3.50 per hour |
|---|---|---|
| Labor-Management Cooperation Committee | $0.28 per hour (decreased $.17 per hour on 6/1/2016) | $0.17 per hour |
| National Labor-Management Cooperation Fund | $0.01 per hour (maximum of 150,000 hours) | $0.01 per hour (maximum of 150,000 hours) |
| Savings Fund | $1.50 per hour for each Journeyman | $1.50 per hour for each Journeyman |
| National Electrical Benefit Fund | 3% of gross monthly labor payroll paid to employees in bargaining unit | 3% of gross monthly labor payroll paid to employees in bargaining unit |
| Joint Apprenticeship and Training Committee | $1.20 per hour for all hours worked | $1.20 per hour worked |
| Administrative Maintenance Fund | 0.5% of gross monthly labor payroll (increased 0.8% on 6/1/2016) | 0.8% of gross monthly labor payroll |
| Working dues | Effective 6/1/2016, worker dues were 3.5% of member's pay based on hours | 3.5% |

In addition, the Agreements contemplate liquidated damages fees for late payments. After the 15th day, the Agreements imposed a penalty of $100 plus 5% interest on the monies owed; after the 25th day, the Agreements add an additional $200 and 5% interest on the monies owed. The Agreements further contemplate payment for legal, audit, and court fees incurred to collect unpaid contributions.

### C.     The Audit by Richard J. Wolf and Co., Inc.

Despite signing a letter of assent, New Frontier did not make all the required contributions to these funds during the period from June 1, 2016 to December 31, 2017.  New Frontier made at least some payments to the Health and Welfare Fund for the work performed by James Foster, although the parties dispute whether New Frontier made all the required payments. Plaintiffs engaged the services of Patrick Lynch, an auditor with the Richard J. Wolf and Company, Inc., to audit New Frontier, as permitted by the 2015 and 2017 Agreements.

According to Lynch's audit, New Frontier owes a total of $762,397.86 to the various benefit funds. Plaintiffs further contend that New Frontier did not make contributions for covered work by Kwate Dodd, Houston Thomas, and Richard Delaney—all of whom worked for New Frontier at some point performing non-electrical work. According to Foster, this work mostly consisted of gathering materials from stores for various electrical jobs that Foster performed.

In determining the total dues owed, the auditor separated the amounts owed into two groups: "Additional Hours and Earnings" and "Unreported Hours and Earnings." For "Additional Hours and Earnings," the auditor determined the numbers of hours worked by Foster (it is unclear how the auditor calculated these hours) and multiplied that number by the applicable rates to arrive at the amount of additional dues that Defendant owes. With respect to the "Unreported Hours and Earnings," the auditor reviewed records provided to him from New Frontier's banks: Chase Bank and First Midwest Bank. In these records, he observed various withdrawals without any documentation showing where this money went or how it was used. He took the total value that had no documentation and divided that number by the benefit package (contained in the 2015/2017 Agreements) to calculate the number of hours worked. The parties dispute whether New Frontier employed any other covered employees aside from James Foster who required contribution payments. In any event, New Frontier doesn't dispute that Foster personally performed electrical work on various projects during the relevant time frame. After calculating the number of hours worked for each month, the auditor multiplied the number of hours worked by the applicable fringe benefit rate for each fund to determine the amount owed to each fund.

The parties also dispute whether the auditor accounted for funds New Frontier spent on materials, paid to subcontractors, or spent on non-electrical work. The audit omitted any

withdrawals accompanied by documentation showing that New Frontier used the withdrawal for some other purpose, but treated the other withdrawals as payments for labor since the auditor received no documentation showing how New Frontier used these withdrawals. Plaintiffs initiated this lawsuit to recover those alleged unpaid contributions.

## Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). To establish an undisputed material fact, a party "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

## Discussion

Section 1145 of Title 29 obligates every employer bound by a multi-employer plan to make contributions consistent with that plan. 29 U.S.C. §1145. If an employer fails to make these payments, the Employee Retirement Income Security Act of 1974 ("ERISA") permits a plan's fiduciary to file a federal civil action to collect the total unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs of the action, and such other legal or equitable relief as the court deems appropriate. 29 U.S.C. §1132(g)(2)(A–E).

Plaintiffs argue that the Defendant did not make all its required fringe benefit contribution payments. Defendant, in response, argues that (1) res judicata bars Plaintiffs'

motion for summary judgment, (2) Defendant made the required contributions to the Health and Welfare Fund, and (3) genuine issues of material fact remain precluding summary judgment with respect to Plaintiffs' audit. The Court addresses each argument in turn.

## I.      Res Judicata

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Res judicata blocks a second lawsuit if there is: (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action. *Barr v. Board of Trustees of Western Illinois University*, 796 F.3d 837, 840 (7th Cir. 2015).

Defendant's reliance on this doctrine is misplaced. First, the Court's prior order denying Plaintiffs' motion for summary judgment was not a final judgment on the merits. *See Stinson v. Gauger*, 868 F.3d 516, 522 (7th Cir. 2015) ("An order denying a motion for summary judgment is usually not a final decision within the meaning of § 1291 and so is not generally immediately appealable"). Second, the Court permitted Plaintiffs to file an amended motion for summary judgment because of an error with uploading Plaintiffs' supporting evidence and exhibits onto the electronic filing system. *See* [117]. Simply put, the doctrine of res judicata does not apply in this circumstance.

## II.     Contribution Payments

Next, the Court must determine whether the Agreements required New Frontier to make contribution payments for each fund, or if the Agreements only required a minimum payment to the Health and Welfare Fund. Courts interpret collective bargaining agreements according to ordinary principles of contract law. *M&G Polymers USA, LLC v. Tackett*, _U.S._, 135 S. Ct. 926,

933 (2015); *U.S. Soccer Federation v. U.S. Women's Nat. Soccer Team Assoc.*, 190 F. Supp. 3d 777, 784 (N.D. Ill. 2016). As such, courts must first look to the agreement's plain language when interpreting its terms. *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 671 (7th Cir. 2013) (Darrow, J., concurring).

Plaintiffs contend that while it made some Health and Welfare Payments for Foster, New Frontier did not make contribution payments to the other funds as contemplated by the Agreements and did not make additional payments for unreported hours. To support this, Plaintiffs rely mainly on the audit conducted by Patrick Lynch. New Frontier acknowledges that it only made contributions to the Health and Welfare Fund for work performed by Foster but argues that the Agreements do not require payment to the other funds.

The Court agrees with Plaintiffs that the Agreements' plain language requires payments to all funds. For example, in the 2015 Agreement it states in Section 3.12 with respect to the Health and Welfare Fund, that "[e]ach employer shall contribute the sum of fourteen dollars and seventy seven cents (14.77) per hour to such welfare fund, for each hour worked…[.]" Likewise, in Section 3.16, with respect to the Pension Trust Fund, the agreement states that "[e]ach employer shall contribute the sum of ten dollars and five cents ($10.05) per hour to such pension fund, for each hour worked starting June 1, 2015." Both the 2015 and 2017 Agreements contain similar language that establish that payments to each fund are mandatory and not discretionary. Thus, to the extent that New Frontier did not make payments to these funds for hourly work covered by the agreement, it owes those payments.

Furthermore, the Court disagrees that language in the Agreements permit employers to make a minimum payment amount to only the Health and Welfare Fund, as argued by Defendant. Defendant refers to the following language in support of its position:

> On behalf of any such owner in fact, the employer shall pay contributions to the Fringe Benefit Funds, pursuant to the Section 3.17 (a) & (b) of this agreement, on the basis of the gross wages of a Journeyman Wireman for the hours actually worked by such individual; but at a minimum, contributions to the Health & Welfare Fund, pursuant to Section 3.12, shall be made as though such individuals worked not less than thirty-seven (37) hours per week for fifty (50) weeks not less than 1850 hours per year. [130-1] at pg. 30; *see also* [130-1] at pg. 66 (2017 Agreement with same language)

Defendant argues that this language gives employers a choice whether to pay just the minimum Health and Welfare contributions or make all contributions to all funds. Plaintiffs respond, and the Court agrees, that this minimum-payment language allows an owner-in-fact to be eligible for health care coverage, even if the owner doesn't actively work in the field, as some owners don't perform the physical work themselves. But this provision does not alleviate an employer's obligation to pay fund dues for each hour worked by a covered employee. Indeed, the Agreement's language doesn't couch contribution payments in discretionary terms, permitting an "either/or" scenario, where an employer can either make the payments for all funds or choose to only make contributions to the Health and Welfare fund. Rather, the Agreements set a baseline for what contribution an owner-in-fact must make, even if they don't perform any covered hourly work themselves.

## III. Contributions for New Frontier Employees

The parties further dispute whether the Agreements require contribution payments for non-electrician employees that New Frontier may have employed. Again, the Court looks to the plain language to resolve this issue. In the 2015 Agreement, Section 2.03 spells out the type of work that is covered by the agreement. Similarly, in the 2017 Agreement, Section 3.14 does the same. These provisions are virtually identical and state that the work covered by the Agreements includes electrical work relating to the installation, operation, maintenance and repair of all electrical wiring and electrical equipment used to construct or repair buildings, bridges, street

and highway work, tunnels, subways, shafts, dams, river and harbor work, airports, mines, and all electrical raceways for electrical cables and wires. In broader terms, the Agreements cover any electrical work performed by an electrician working for an employer who agrees to be bound by the collective bargaining agreement. But these Agreements do not cover non-electrical work performed by other employees.

As such, the record demonstrates that a question of fact remains whether Defendant was required to make contributions for any work performed by Kwate Dodd, Houston Thomas, and Richard Delaney—who, assuming facts most favorable to the non-movant, were not electricians during the relevant time period and only performed non-electrical work. Because James Foster was the sole owner of New Frontier, he possesses the personal knowledge to attest to this fact, and his deposition testimony creates a dispute of fact as to whether contributions for their work was required.

## IV. The Audit's Calculations

Lastly, although Plaintiffs establish that Defendant owes at least some contributions, genuine issues of material fact on the total amount of contributions owed preclude summary judgment. ERISA requires employers to maintain records regarding their employees "sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1); *see also* 29 U.S.C. § 1027 (requiring company to retain such records for at least six years). "The records must be contemporaneous time records that reflect the type of work performed, the date the work was performed, and the work location." *Sullivan v. Tag Plumbing Co.*, Case No. 08-cv-3669, 2012 WL 3835526, at *5 (N.D. Ill. Sept. 4, 2012) (internal quotation marks omitted); *see also Laborers' Pension Fund v. RES Environmental Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004). The failure to maintain sufficient records can have serious

11

consequences, as the Seventh Circuit explained in *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, where the court found that once a fund shows that the employer's records are deficient, and the funds produce a seemingly sound accounting, the employer must then explain why its payments to the funds are proper. 347 F.3d 262, 264-65 (7th Cir. 2003). If the employer makes a sufficient explanation, then the funds must prove at trial the additional amounts it is owed. "[I]n the absence of an explanation by the employer, the fund would prevail on summary judgment." *Id.*

This presumption in the fund's favor, however, is not meant to establish whether a defendant owes contributions at all. Rather, it relieves a "plaintiff fund of its burden to prove precisely how much of the work performed by the defendant's employees was covered work when the employer has failed to keep records that would have allowed the fund accurately to calculate such damages." *Laborers' Pension Fund v. A&C Environmental, Inc.*, 301 F.3d 768, 783 (7th Cir. 2002). Indeed, the Seventh Circuit explains "that this rule does not apply to compel judgment against an employer when the employer raises a genuine issue of material fact as to the accuracy of the fund's calculation." *Id.*; *see Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995) (employer's failure to come forward with documentary evidence establishing amount of covered work performed was not fatal in effort to oppose fund's motion for summary judgment when factual issues remained as to the amount owed).

Here, genuine issues of material fact preclude summary judgment as to the amount owed. For instance, as stated above, the parties dispute whether the Agreements required contributions for Kwate Dodd, Houston Thomas, and Richard Delaney. Plaintiffs argue that these individuals performed electrical work during the relevant time period and, therefore, the Agreements cover

them as well. But New Frontier argues that it had no other employees during the relevant time period aside from James Foster, and that Dodd, Thomas, and Delaney did not perform electrical work covered by the Agreements. This presents a classic dispute of fact.

In addition, the parties dispute whether the audit appropriately accounts for payments by New Frontier for cost of materials and payments to subcontractors. In arguing the deficiency of New Frontier's recordkeeping and the audit's reasonableness, Plaintiffs analogize the present case to *Laborers' Pension Fund v. Loucon Construction, Inc.*, Case No. 98-cv-6227, 2004 WL 2538298 (N.D. Ill. 2004). In *Loucon*, the district court granted summary judgment for pension funds that claimed that the defendant failed to make contribution payments. *Id.* at *7. In that case, the court considered whether the plaintiffs showed the defendant's records were deficient and whether the plaintiffs produced a sound accounting suggesting money was owed. *Id.* at *5. With respect to the records, the court found that the plaintiffs met their burden based on the defendant's substandard record keeping practices. *Id.* at *5-6. Moreover, the defendant failed to respond to the plaintiffs' motion for summary judgment, and therefore the court concluded that the defendant offered no contradictory evidence that the accounting was unsound. *Id.* at *6-7. Accordingly, the court granted summary judgment for the plaintiffs. *Id.*

*Loucon* is distinguishable. First, the *Loucon* defendant completely failed to respond to the plaintiffs' summary judgment motion, whereas, in this case, although inartful and not in full compliance with Local Rule 56.1, Defendant has at least responded to Plaintiff's motion for summary judgment. Second, the *Loucon* defendant did not offer any reason why the audit in that case was incorrect. 2004 WL 2538298, at *5. Here, however, Defendant argues that the audit does not account for certain non-labor items such as costs and materials, and the record contains some support for this argument. *See* [130-7] (Defendant Answers to Interrogatories detailing

costs for various projects); [130-8] (Defendant's Amended Answers to Interrogatories containing receipts for costs). As such, genuine disputes as to the audit's calculations—particularly whether New Frontier employed additional employees that required contribution payments and whether the audit calculations accounted for non-labor items—preclude the issuance of summary judgment.

## Conclusion

For the reasons above, the Court denies Plaintiffs' motion for summary judgment. This case will proceed to trial to determine (1) whether New Frontier employed individuals for which contribution payments were required, and (2) the amount of contribution payments required by New Frontier. This case is set for a hearing on September 27, 2021 at 9:30 AM to set dates for trial and, if the parties wish, a referral to the Magistrate Court for settlement.

**SO ORDERED.**                                      **ENTERED:   September 13, 2021**

_____
**JORGE L. ALONSO**
**United States District Judge**

14